UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY LYNN VOSBURGH,

              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

DECISION & ORDER

17-CV-6587P

## PRELIMINARY STATEMENT

Plaintiff Tammy Lynn Vosburgh ("Vosburgh") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 7).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 14, 17). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. Analysis

### A. Vosburgh's Submission of Additional Evidence to the Appeals Council

Among other alleged errors, Vosburgh contends that remand is warranted because the Appeals Council failed to properly consider additional evidence she submitted after the ALJ's decision, but prior to the Appeals Council's denial of her request for review of that decision. (Docket ## 14-1 at 25-26; 18 at 5-11). Specifically, in April 2017, Vosburgh submitted two additional pieces of evidence to the Appeals Council for consideration (Tr. 299)[1]: first, medical records detailing Vosburgh's voluntary admission to Guthrie Robert Packer Hospital Behavioral Health, dated January 26, 2017 through February 2, 2017 (Tr. 13-31); and second, treatment notes from a December 7, 2016 evaluation of Vosburgh by rheumatologist Dr. James Freeman ("Freeman") (Tr. 32-34).

The Appeals Council acknowledged receipt of this evidence, but found that because the ALJ "decided [Vosburgh's] case through November 29, 2016[,] [t]his additional evidence d[id] not relate to the period at issue." (Tr. 2). The Appeals Council thus determined that the additional evidence did "not affect the decision about whether [Vosburgh] w[as] disabled

---

[1] References to page numbers in the Administrative Transcript (Docket # 10) utilize the internal Bates-stamped pagination assigned by the parties.

4

beginning on or before November 29, 2016." (*Id.*). As a result, the Appeals Council denied Vosburgh's request for review of the ALJ's decision on July 7, 2017. (Tr. 1).

Vosburgh argues that the Appeals Council should have accepted Freeman's evaluation because it was new evidence, material to the relevant time period, contradicted the ALJ's step two finding related to Vosburgh's fibromyalgia, and "may have changed the outcome of the hearing decision." (Docket # 14-1 at 26). In a one-sentence footnote in her opening brief, expanded upon only in her reply brief, Vosburgh also contends that her psychiatric records from Guthrie Robert Packer Hospital Behavioral Health were "also new and material evidence and should have been accepted." (*Id.* at 26 n.22). Vosburgh maintains that this evidence "suggest[s] [her] impairments were more limiting than the ALJ believed" and "creates a possibility of a different outcome." (Docket # 18 at 10-11).

With respect to Freeman's notes, the Commissioner responds that there is no reasonable probability that this additional evidence would change the ALJ's decision. (Docket # 17-1 at 26-28). Specifically, the Commissioner argues that Freeman's evaluation would not affect the ALJ's step two finding that Vosburgh's fibromyalgia is not a medically determinable impairment. (*Id.*). In addition, with respect to the additional psychiatric records, the Commissioner maintains that the records do not relate to the relevant period of time and the Appeals Council therefore committed no error in declining to consider the additional psychiatric records. (*Id.* at 25-26).

1. **Freeman's Treatment Notes**

"The Appeals Council must consider additional evidence that a claimant submits if the claimant can show good cause for not submitting it to the ALJ, it is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it

5

would change the outcome of the decision." *Redic v. Comm'r of Soc Sec.*, 2019 WL 1512556, *3 (W.D.N.Y. 2019) (citing, *inter alia*, 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b)).

"Evidence is 'new' when it has not been considered previously in the administrative process," *Pferrer-Tuttle v. Colvin*, 2015 WL 5773524, *5 (W.D.N.Y. 2015), and when it is "not cumulative of what is already in the record," *Pennetta v. Comm'r of Soc. Sec.*, 2019 WL 156263, *3 (W.D.N.Y. 2019). Evidence is "material" when it is "relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Id.* (citing *Webb v. Apfel*, 2000 WL 1269733, *14 (W.D.N.Y.), *report and recommendation adopted by*, 2000 WL 1209385 (W.D.N.Y. 2000)); *accord Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("[n]ew evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative'[;] . . . [t]he concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently") (brackets and citation omitted). "If the Appeals Council fails to consider new, material evidence, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Davidson v. Colvin*, 2013 WL 5278670, *7 (N.D.N.Y. 2013) (quotations omitted).

Here, Freeman's treatment notes, dated December 7, 2016, could not have been considered by the ALJ because he evaluated Vosburgh eight days after the ALJ rendered his decision on November 29, 2016. The timing of the evaluation establishes "good cause" for Vosburgh's non-submission of the notes to the ALJ. *See*, *e.g.*, *Redic v. Comm'r of Soc. Sec.*, 2019 WL 1512556 at *5 (claimant "had good cause for not submitting [additional evidence] to

the ALJ because it did not exist before [the ALJ] issued her decision"); *see also McCarthy v. Colvin*, 2018 WL 495678, *15 (D. Conn. 2018) ("as the evidence submitted by plaintiff [to the Appeals Council] did not exist at the time of the ALJ's decision, there is no question that the evidence is 'new' and that 'good cause' existed for her failure to submit this evidence to the ALJ").

Moreover, the notes are not cumulative of evidence considered by the ALJ. In determining, at step two of the sequential process, that Vosburgh's complaint of fibromyalgia was not a medically determinable impairment, the ALJ stated that the record did not prove tender points or symptoms associated with fibromyalgia, or that other explanations for Vosburgh's complaint had been ruled out. (Tr. 41). Freeman's treatment notes address those gaps. *See, e.g., Sears v. Colvin*, 2013 WL 6506496, *6 (N.D.N.Y. 2013) (medical records not cumulative where claimant "had not previously been treated by a rheumatologist or diagnosed with fibromyalgia"). Accordingly, the treatment notes are properly considered "new."

In addition, I find that if the ALJ had considered Freeman's treatment notes, a reasonable probability exists that the ALJ's decision might have been different, particularly in light of his step two determination. The ALJ determined at step two that Vosburgh had not made a showing that fibromyalgia was a medically determinable impairment, observing, among other things, that the "only reference [in the record] is 'probably has an element of fibromyalgia,' which is insufficient[;] [t]he remaining requirements [to find fibromyalgia a medically determinable impairment] are not met." (Tr. 41 (citing Tr. 1358)). In doing so, the ALJ relied on Social Security Rule ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012), which "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia[.]" SSR 12-2p, 2012 WL 3104869 at *1.

7

Pursuant to SSR 12-2p, in order to find fibromyalgia to be a medically determinable impairment, "a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded." *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573, *4 (W.D.N.Y. 2019) (citing SSR 12-2p, 2012 WL 3104869 at *2-3).[2]

By finding that fibromyalgia was not a medically determinable impairment from which Vosburgh suffered, the ALJ had no legal basis upon which to find that fibromyalgia was severe or non-severe. (Tr. 40-41); *see Talbot v. Colvin*, 2015 WL 5512039, *4 (N.D.N.Y. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)) ("[o]nly medically determinable impairments may be considered severe or non-severe"). This is critical because "an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable." *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573 at *5. "Put another way, because the ALJ concluded that [Vosburgh's] fibromyalgia [was] not a medically determinable impairment, [he] had no basis to credit [Vosburgh's] statements regarding her fibromyalgia-related symptoms in the remainder of her decision." *Id.*; *see also Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) (remanding at step two based on ALJ's rejection of fibromyalgia as a medically determinable

---

[2] The first of these methods is based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia (the "1990 ACR Criteria"). SSR 12-2p, 2012 WL 3104869 at *2-3. The second is based on the 2010 ACR Preliminary Diagnostic Criteria (the "2010 ACR Criteria"). *Id.* at *3.

8

impairment; "[h]ere, [the ALJ] did not consider the potential functional limitations as a result of [p]laintiff's fibromyalgia symptoms after discounting [p]laintiff's fibromyalgia as a medically determinable impairment, and accordingly, remand is warranted").

As a result, the ALJ did not credit Vosburgh's fibromyalgia-related symptoms in his decision, nor incorporate any related limitations into his RFC determination, despite evidence in the record that Vosburgh suffered from such symptoms and limitations. (*See*, *e.g.*, Tr. 70-71 (Vosburgh testified at hearing that her fibromyalgia makes it "hard to get out of bed in the morning" and to "go upstairs," and causes her "muscles to hurt [and] burn" and causes her to "fall a lot"); Tr. 1357-59 (treatment notes from Dr. Darius Listopadzki dated April 29, 2016, noting that Vosburgh had "[d]iffuse joint pains; neck, lower back, hips, elbows, TMJs, for weeks, getting worse" and "most probably has an element of fibromyalgia")).

Freeman's treatment notes are probative because they potentially conflict with the ALJ's step two determination. For example, the notes confirm Vosburgh's "history of depression and chronic pain," her complaints of "fatigue for years," and that "[s]hortly" after a fall in 2015, she "developed generalized pain and soreness all over the body from neck to ankles." (Tr. 32). Freeman noted Vosburgh's reports that she "developed restless legs at night" and has "chronic headaches and irritable bowl syndrome," and specified that Vosburgh has "chronic constipation and abdominal discomfort with regular episodes of diarrhea for a few days each month [and] [s]he has had a loss of appetite" (Tr. 32-33), which are symptoms and signs of fibromyalgia based on the 2010 ACR Criteria. *See* SSR 12-2p, 2012 WL 3104869 at *3, n.9. Freeman also indicated several "fibromyalgia tender points," which are relevant for the 1990 ACR Criteria, and that other exclusionary tests had been performed and were either normal or negative, except for a "weak positive ANA," which Freeman opined was "most likely, a false

9

positive test." (Tr. 32-33). Freeman concluded that Vosburgh had "classic symptoms and signs of fibromyalgia." (Tr. 33).

Properly considered, these treatment notes could have affected the ALJ's step two determination whether fibromyalgia was a medically determinable impairment, as well as the ALJ's analysis at the remaining steps of the sequential process. Indeed, on this record, I find that a reasonable probability exists that Freeman's notes would change the outcome of the ALJ's decision.

The Appeals Council's rejection of the treatment notes did not include any of this analysis. Instead, the Appeals Council declined to consider Freeman's notes based solely on the fact that Freeman completed his evaluation after the ALJ had rendered his decision, reasoning that the "additional evidence d[id] not relate to the period at issue." (Tr. 2).

It is well-established, however, that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (summary order) (citing *Pollard v. Halter*, 377 F.3d at 193). Evidence that is generated after an ALJ's decision may bear on the evaluation of the claim if the "evidence directly supports [the claimant's] earlier contentions regarding [her] condition . . . [or] strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought." *Pollard*, 377 F.3d at 193. This is especially true where subsequent evidence contains a diagnosis that "sheds considerable new light on the seriousness of [a claimant's] condition." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (internal quotation omitted). "Thus, the Appeals Council's categorical refusal to consider new and material evidence solely because it was created after the ALJ's decision can constitute reversible error." *Bluman v. Colvin*, 2016 WL 5871346, *3 (W.D.N.Y. 2016).

10

I find that Freeman's treatment notes relate to the relevant period. The timing of Freeman's evaluation – a mere eight days after the ALJ's decision – makes it unlikely that he was assessing new symptoms that Vosburgh developed after the date of the ALJ's decision, which the Appeals Council would not have been required to consider. *See Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 362 (W.D.N.Y. 2018) ("evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council"). Rather, based on Freeman's focus on Vosburgh's fibromyalgia-related history of symptoms and signs, which existed at least to some extent prior to the ALJ's decision (*see*, *e.g.*, Tr. 70-71, 1357-59), the treatment notes more likely reflect a diagnosis that "sheds considerable new light on the seriousness of [Vosburgh's] condition." *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d at 44; *see also Redic*, 2019 WL 1512556 at *4 (Appeals Council erred "by rejecting [doctor's] opinion simply because it post-dated the ALJ's decision"[;] "[a]lthough [doctor] does not explicitly cite the relevant period, she refers to [claimant's impairment], which the ALJ found to be a severe impairment and the record reveals has been ongoing for many years[;] [b]efore rendering her opinion, it appears that [doctor] last examined [claimant] . . . just three days after the ALJ issued her decision[;] [i]t is unlikely that [claimant's] condition deteriorated in this short amount of time; instead [doctor's] opinion likely clarifies the nature of [claimant's impairment] and its limitations during the relevant period").

Under these circumstances, the Court concludes that Vosburgh has demonstrated good cause for failing to submit Freeman's treatment notes to the ALJ, that the additional evidence is new, material, and gives rise to a reasonable probability that the evidence would change the ALJ's decision. The Court also finds that the evidence is related to the period on or

11

before the ALJ's decision. Therefore, the Appeals Council's "cursory, formulaic rejection of the evidence simply because it was generated after the ALJ's decision, without any legal or factual reasoning, is insufficient," and remand is warranted for reconsideration in light of this new evidence. *McCarthy v. Colvin*, 2018 WL 495678 at *15 (internal quotation omitted); *see also Lisa*, 940 F.2d at 43-45 (reports from four physicians diagnosing claimant with fibromyalgia warranted remand because new diagnosis suggested that impairment was more severe than previously diagnosed and "substantially bolster[ed] the credibility of [her] subjective complaints"); *Sears v. Colvin*, 2013 WL 6506496 at *4-6 (Appeals Council erred by refusing to consider evidence "solely because it was created after the date of the ALJ's decision" where evidence consisted of treatment notes of physician who diagnosed plaintiff with fibromyalgia but did not examine plaintiff until approximately one year after ALJ's decision); *Hood v. Comm'r of Soc. Sec.*, 2012 WL 1029532, *8 (N.D.N.Y.) (Appeals Council erred by refusing to consider treatment notes and assessment from physician who diagnosed plaintiff with chronic obstructive pulmonary disease and first examined plaintiff four months after ALJ's decision); *report and recommendation adopted by*, 2012 WL 1029524 (N.D.N.Y. 2012).

    **2. Psychiatric Records from Guthrie Robert Packer Hospital Behavioral Health**

Upon review of Vosburgh's additional psychiatric records, I agree with the Commissioner that this evidence does not relate to the period of time at issue. The records reveal that Vosburgh was admitted on a voluntary basis for psychiatric treatment on January 26, 2017, for "depression and suicidal thoughts." (Tr. 14). She reported that her symptoms had been "building up for a while, [she] th[ought]" and that "everything started getting worse two weeks ago[.]" (Tr. 13-14). Her discharge diagnoses on February 2, 2017, were major depressive

disorder, moderate, recurrent, without psychotic features, and general anxiety disorder" (Tr. 21), which the ALJ had considered and found to be severe impairments at step two (Tr. 40).

The records concern Vosburgh's conditions as they existed in January to February 2017, and do not clearly refer to the relevant time period or suggest that they were meant to be retrospective in nature. Therefore, the Appeals Council did not err in finding that this evidence did not relate to the period at issue. *See Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d at 362 ("evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council"); *see also Collins v. Comm'r of Soc. Sec.*, 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) ("[w]hile documents generated after the ALJ's decision may bear upon the severity and continuity of impairments existing during the relevant period, if the new evidence concerns only the claimant's condition after the relevant time period, a remand for consideration of this evidence is not appropriate") (citations and quotations omitted); *O'Connell v. Astrue*, 2013 WL 1337282, *4 (W.D.N.Y. 2013) ("new evidence is not material if it tends to establish only 'a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition'") (quoting *Cassera v. Sec'y of Health & Human Servs.*, 104 F.3d 355 (2d Cir. 1996)), *aff'd*, 558 F. App'x 63 (2d Cir. 2014) (summary order).

B. **Vosburgh's Remaining Contentions**

Vosburgh advances several other arguments she believes require remand. In light of the Appeals Council's error, however, the Court need not reach Vosburgh's remaining contentions. *See*, *e.g.*, *Redic*, 2019 WL 1512556 at *2 n.3 (remanding for reconsideration in light of the new evidence and declining to reach claimant's remaining contentions); *see also Bluman v. Colvin*, 2016 WL 5871346 at *3 n.2 (same).

13

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 17)** is **DENIED**, and Vosburgh's motion for judgment on the pleadings **(Docket # 14)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 11, 2019